FILED'11 JUN 28 12:11USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

No. 1:10-cr-30069-PA

v.

DEYSY VARGAS-SAENZ,

**ORDER**

    Defendant.

**PANNER, District Judge:**

Defendant Deysy Vargas-Saenz moves to suppress statements. I grant the motion.

### FINDINGS OF FACT

Vargas, who is 22 years old, is a citizen of Mexico and a native Spanish speaker. In May 2010, Vargas was stopped in Josephine County while driving a Subaru Forester filled with camping equipment and groceries. Joshua White, a Josephine County detective, suspected that Vargas was acting as a "lunchero" delivering supplies to marijuana grows.

Detective White belonged to a DEA joint task force composed of state and federal law enforcement officers investigating

1 - ORDER

marijuana grows in southern Oregon.  The DEA task force included two federal agents who later interrogated Vargas: Fernando Lozano, an agent for Immigration and Customs Enforcement (ICE), and Thomas French, a special agent with the Bureau of Land Management (BLM). Both men are fluent in Spanish.

In late August 2010, Jackson County Sheriff's officers arrested Vargas and her co-defendant, Salvador Solorio-Barragan, on state marijuana charges.  Defendants' daughter, then less than two years old, was taken by child welfare workers and later sent to live with Vargas's parents.

On the day of the arrest, White and BLM agent French tried to interrogate Vargas.  When French gave Vargas <u>Miranda</u> warnings, Vargas requested an attorney and French stopped the interrogation. Later that day, Vargas indicated she would talk to law enforcement but only outside the presence of Solorio-Barragan.  French said there would be no further interrogation.

Vargas was indicted in state court for conspiracy to manufacture marijuana.  An attorney was appointed for her.

In mid-October 2010, a deputy district attorney told Detective White that the state would soon dismiss the charges against Vargas.  White conferred with the U.S. Attorney's Office about filing federal charges.  As a member of the DEA task force, White was authorized to enforce both state and federal drug laws.

White drafted an affidavit in support of a federal criminal complaint against Vargas and Solorio-Barragan, based on the same allegations as the state charges.  White's affidavit and the

2   - ORDER

federal complaint were filed in this court on October 18, 2010.

On the morning of October 20, 2010, the state dismissed the charges against Vargas. Vargas remained in jail because of her immigration status.

The deputy district attorney notified Detective White as soon as the state charges were dismissed. White, French, and Lozano decided to interrogate Vargas that afternoon at the jail. They wore plain clothes and had no weapons in the interview room.

Vargas testified that when she walked into the interview room, she said, "listen, have you already notified my attorney about this, and Lozano answered no, because I didn't have an attorney anymore because the attorney that had been appointed for me had been appointed by the State. And the State had dismissed all the charges that day." Tr. 71.

Lozano denies Vargas asked about her attorney. Lozano testified, "I told her that once the case had been dismissed that the State attorney no longer represented her, but that she would be given a new attorney in a day or two." Tr. 25. Lozano's explanation was a logical response to Vargas's question. I find that Vargas asked whether her attorney had been notified.

After reading Vargas her Miranda rights, Lozano asked about Vargas's daughter. Vargas said she was with Vargas's parents in Utah. Lozano asked whether Vargas's parents were in the United States legally, and Vargas said no.

French testified the interrogators "all stood up and it was like, well, you know, hey, that's it. And we were going to leave

3   - ORDER

and Agent Lozano said, well, I'm going to have some people go and speak to your parents about this matter." Tr. 37-38. Lozano testified, "When we had concluded the interview is when I told her I would be sending some [ICE] agents over to discuss this matter with her parents." Tr. 26. Lozano testified that Vargas replied, "please don't involve my parents, I'll tell you what you want to know." Tr. 27.

Vargas stated that when Lozano "threatened me with going after my family, he stood up almost screaming at me, really furious." Def.'s Mem. in Supp., Ex. B, at 10. Lozano denied raising his voice, but admitted being "possibly a little frustrated." Tr. 26-27. Vargas testified that Lozano later "asked me if my parents were old and I said yes. He said pity your father without money, without work and in Mexico, and with your daughter there, and not even coming back." Tr. 72.

## DISCUSSION

### I. The Interrogation Violated Vargas's Miranda Rights

The government has a heavy burden of proving that a suspect knowingly and voluntarily waived her Miranda rights. United States v. Rodriguez, 518 F.3d 1072, 1080 (9th Cir. 2008). If a suspect refers even ambiguously to an attorney before waiving her rights, the interrogator must clarify the suspect's statement before interrogating her. Id.

Here, Vargas asked about her attorney before being read her Miranda rights. Lozano not only failed to clarify her question, he also told Vargas she would not be appointed an attorney "for a

4 - ORDER

day or two." Although Lozano then gave Vargas her Miranda rights, the damage was done. Vargas testified, "a minute before they had just told me that I didn't have an attorney. . . . I was scared. I was confused. I was under the impression that Daniel Simcoe was my attorney and they told me that he wasn't." Tr. 75.

Vargas's waiver of her Miranda rights was not knowing or intelligent. Her statements must be suppressed.

## II.  The Interrogation Violated Vargas's Fifth Amendment Rights

Alternatively, Vargas's statements must be suppressed because Lozano threatened to have her parents deported.

A confession is involuntary if it was extracted by physical intimidation or psychological threats. Mickey v. Ayers, 606 F.3d 1223, 1233 (9th Cir. 2010). The government must prove voluntariness by a preponderance of the evidence. United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003).

Here, when Lozano established that Vargas had reason to fear her parents could be deported, he threatened to send ICE agents after them. Only then did Vargas confess. Lozano emphasized the hardships deportation would cause: "pity your father without money, without work and in Mexico, and with your daughter there, and not even coming back." Tr. 72.

"The tactic of inducing a suspect to talk by threatening adverse consequences to a loved one is a particularly pernicious technique." United States v. Rodgers, 186 F. Supp. 2d 971, 976 (W.D. Wis. 2002) (collecting cases). Here, Lozano overcame Vargas's resistance by threatening her parents. Her confession

5  - ORDER

was involuntary and must be suppressed.

### III. The Interrogation Violated Vargas's Sixth Amendment Rights

As a separate ground for suppression, I conclude that state and federal authorities worked together to circumvent Vargas's Sixth Amendment right to counsel.

In United States v. Martinez, 972 F.2d 1100 (9th Cir. 1992), as here, "the state and federal charges arose from identical conduct," the Sixth Amendment right to counsel attached to the state charges, and "the state charges had been dismissed at the time of the federal interrogation." Id. at 1103. In Martinez, the Ninth Circuit remanded for the district court to determine whether "federal and state authorities worked together in shuffling [the defendant's] charge from the state to the federal system." Id. at 1105. "The key, of course, is the extent of coordination between the state and federal authorities." Id.

Here, the same person, Detective White, was the lead officer for both the state and federal charges against Vargas. When asked why he was notified as soon as the state dismissed its charges against Vargas, White replied, "Well, we wanted to talk to Deysy." Tr. 59. White noted Vargas had indicated a desire to talk, but that was on the day of her arrest. White waited almost two months to approach Vargas, choosing the first day in weeks that Vargas had no appointed counsel.

In the words of the Martinez opinion, Vargas is being federally "prosecuted, on a charge identical to that of the state, using a statement that the state could not have secured from [her]

if it had proceeded with its prosecution." 972 F.2d at 1105. Because "the initiation of federal interrogation" was a "mutual endeavor in anticipation of a federal prosecution," Vargas's Sixth Amendment right to counsel was violated. Id.

### CONCLUSION

Vargas's motion to suppress (#25) is granted.

IT IS SO ORDERED.

DATED this 28 day of June, 2011.

_____
OWEN M. PANNER
U.S. DISTRICT JUDGE

7 - ORDER